M20120

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JOHN LEE, | } |
| Plaintiff, | } CV-12-HS-2720-S |
| vs. | } |
| AMSHER COLLECTION SERVICES, INC., | } |
| Defendant. | } |

## COMPLAINT

COMES NOW the Plaintiff, JOHN LEE, in the above captioned action by and through the undersigned and hereby Complains as follows:

*Parties*

1. The Plaintiff, John Lee ("Mr. Lee"), is an adult resident of the State of California, living in Los Angeles County, California.

2. Mr. Lee is a natural person.

3. Defendant AmSher Collection Services, Inc. ("AmSher" or "Defendant") is an Alabama corporation engaged in the business of a collection agency, with its principal place of business located in Birmingham, Alabama in Jefferson County.

4. Upon information and/or belief, a principal purpose of AmSher is the collection of debts.

M20120

*Jurisdiction*

5. This action is brought, in part, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter the "FDCPA") which vests jurisdiction in United States district courts. 15 U.S.C. § 1692k(d).

6. This action is also brought, in part, pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (hereinafter the "TCPA").

7. As Mr. Lee's claims under the TCPA are related to the same calls as his claims under the FDCPA such that they form part of the same case or controversy, supplemental jurisdiction exists for Mr. Lee's TCPA claims. 28 U.S.C. §1367(a).

*Factual Allegations*

8. Beginning on or about November 15, 2011, Mr. Lee began receiving phone calls from AmSher on his cellular telephone number. Although Mr. Lee answered the call on or about November 15, 2011, there was no response from AmSher when Mr. Lee answered the phone.

9. Upon information and belief, Mr. Lee did not provide his cellular telephone number to AmSher or give AmSher permission to contact his cellular telephone number.

10. Upon information and belief, Mr. Lee did not have an established business relationship with AmSher, nor did he solicit any services or advertisements from AmSher.

11. On or about November 16, 2011, Mr. Lee received a call from AmSher and was finally able to speak with a representative. In this initial communication with Mr. Lee, AmSher told Mr. Lee it was collecting on a Wells Fargo account that Mr. Lee

M20120

allegedly owed and instructed Mr. Lee that his social security number was tied to said account. After Mr. Lee disputed this debt, informing AmSher that he neither had nor owed money on a Wells Fargo account, a manager from AmSher told Mr. Lee the situation would be cleared up.

12. Additionally, on or about November 17, 2011, Mr. Lee sent a written dispute letter to AmSher, disputing that he owed the debt AmSher was attempting to collect from him. On that same day, an AmSher representative verified they had received the dispute letter and would process it.

13. However, AmSher sent no written verification of the debt to Mr. Lee.

14. In any event, although AmSher told Mr. Lee the situation with the disputed account would be cleared up, AmSher continued to call Mr. Lee, and upon information and belief, many if not all of its calls were made with an automated dialer.

15. On or about November 30, 2011, Mr. Lee asked AmSher to remove his number from any automated dialer and stop making autodialed calls to his phone.

16. However, AmSher responded that they could not stop autodialer calls and that it was their policy to continue making autodialed calls to open accounts.

17. After Mr. Lee's request that AmSher stop making autodialed calls to his phone number, AmSher continued to make calls to Mr. Lee which, upon information and belief, were made with an autodialer.

18. In addition to dealing with unwanted phone calls, Mr. Lee continued to dispute the Wells Fargo account and contacted AmSher in an effort to resolve the error so that he would not receive any more calls from AmSher.

M20120

19. However, despite Mr. Lee's efforts, AmSher continued to call Mr. Lee and made no apparent progress on resolving the situation. Instead, AmSher merely continued to ask Mr. Lee to call back for an update.

20. During one conversation between Mr. Lee and AmSher on or about December 13, 2011, Mr. Lee asked AmSher why he was getting the run around about the situation and an AmSher representative responded by asking Mr. Lee what he thought and stating they were intentionally dropping the ball on Mr. Lee.

21. In total, AmSher made approximately fourteen (14) calls to Mr. Lee regarding the disputed Wells Fargo account which, upon information and belief, Mr. Lee did not owe.

22. Said calls by AmSher were part of a series of similar calls that Mr. Lee received on a continuous and/or regular basis throughout November and/or December 2011.

23. Said calls were persistent and were part of an on-going pattern and/or practice of repeated, wrongful conduct by AmSher.

24. Eventually, after several weeks of AmSher's failure to make progress on resolving the error and stopping collection calls to Mr. Lee, Mr. Lee called Mainstreet Acquisitions, the entity which AmSher said originally sent them the debt at issue.

25. Mainstreet Acquisitions told Mr. Lee they had no record of his social security number and stated they would send a notice to AmSher asking AmSher to stop contacting Mr. Lee.

## COUNT F.D.C.P.A

26. The FDCPA prohibits a debt collector from communicating with a consumer after

M20120

the consumer notifies the debt collector in writing that he refuses to pay a debt or wishes the debt collector to cease further communication with the consumer. 15 U.S.C. § 1692c(c).

27. Mr. Lee notified AmSher in writing that he disputed the debt about which AmSher was contacting him, stating that the debt was not his and thus indicating he would not pay same.

28. Despite this writing, however, AmSher continued to contact Mr. Lee.

29. As a proximate result of AmSher's conduct, Mr. Lee was damaged.

30. The FDCPA requires a debt collector to provide certain validation information to consumers during the initial communication or within five (5) days after the initial communication. 15 U.S.C. § 1692g(a)(1) through (5).

31. AmSher did not, during or within five days after its initial communication with Mr. Lee, send Mr. Lee any notice of validation as required by 15 U.S.C. § 1692g(a)(1) through (5).

32. As a proximate result of AmSher's conduct, Mr. Lee was damaged.

33. During the thirty (30) days after the initial communication, if a consumer notifies a debt collector in writing that the debt or any portion is disputed, the FDCPA requires a debt collector to stop collection of the debt until it obtains verification of the debt and mails such verification to the consumer. 15 U.S.C. 1692g(b).

34. Within thirty (30) days after the initial communication, Mr. Lee notified AmSher in writing that he disputed the debt about which AmSher was contacting him.

35. Upon information and belief, however, AmSher did not obtain verification of the

M2012O

debt allegedly owed by Mr. Lee, nor did AmSher send any such verification of the debt to Mr. Lee.

36. Additionally, upon information and belief, after Mr. Lee sent a dispute letter, AmSher did not cease collection of the debt and did not mail any verification of the debt to Mr. Lee .

37. As a proximate result of AmSher's conduct, Mr. Lee was damaged.

38. The FDCPA prohibits debt collectors from engaging in any conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d.

39. Mr. Lee requested that AmSher take his phone number out of its automated dialer and/or stop making autodialed calls to his phone.

40. Despite this request, however, AmSher refused to cease automated dialer calls to Mr. Lee, stating its policy was to leave Mr. Lee's number its automated dialer until the situation was resolved.

41. Additionally, although Mr. Lee disputed the debt several times and made several attempts to resolve the situation with AmSher, AmSher failed to correct its collection error and continued to call Mr. Lee, meeting his requests for clarification with evasive responses and delays.

42. Further, on one occasion when Mr. Lee asked AmSher why the error had not been resolved yet, AmSher responded by asking Mr. Lee what he thought and stating that it was intentionally dropping the ball on the situation.

43. As a proximate result of AmSher's conduct, Mr. Lee was damaged.

M20120

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against Defendant(s), separately and/or severally, for:

(a) statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

(b) actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

(c) costs of the instant action as well as reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3).

(d) such other and further relief as may be just and /or proper.

## COUNT T.C.P.A.

44. The TCPA prohibits any telephone call(s) using an automatic telephone dialing system or an artificial or prerecorded voice to a cellular telephone number.[1]

45. Upon information and belief, beginning approximately November 15, 2011, AmSher began calling Mr. Lee's cellular telephone number using an automatic telephone dialing system and/or an artificial or prerecorded voice.

46. Upon information and belief, Mr. Lee did not provide his cellular telephone number to AmSher or give AmSher permission or prior express consent to contact his cellular telephone number.

47. Upon information and belief, Mr. Lee did not have an established business relationship with AmSher, and companies cannot transfer established business

---

[1] 47 U.S.C. §§ 227(b)(1)(A)(iii); see also, See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, FCC 03-153, ¶ 165 (2003)

M20120

relationships.[2]

48. AmSher's calls to Mr. Lee adversely affected his privacy rights and proximately caused him damages.

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against Defendant(s), separately and/or severally, for:

(a) an order enjoining the Defendant from further violating the TCPA pursuant to 47 U.S.C. § 227(b)(3)(A);

(b) statutory and/or actual damages pursuant to 47 U.S.C. § 227(b)(3)(B);

(c) treble statutory damages pursuant to 47 U.S.C. § 227(b)(3);

(d) comparable damages pursuant to 47 U.S.C. § 227(c)(5);

(e) such other and further relief as may be just and /or proper.

## COUNT: NEGLIGENCE

49. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

50. The Defendants had a duty to exercise reasonable care in their actions.

51. The Defendants negligently breached said duty.

52. This count is extended to but is not limited to the negligent hiring, training, supervision and retention.

52. The Plaintiffs were damaged as a proximate result of said breach of duty.

---

[2] See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14083 (2003).

M20120

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against each named Defendant and Fictitious Defendant, separately and severally, for compensatory and punitive damages in an amount to be determined by the jury, plus costs, along with such other, further and different relief to which Plaintiff may be entitled.

## COUNT: NEGLIGENCE PER SE

53. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

54. The Defendants had a duty imposed by statute and /or ordinance and /or regulation and /or rule.

55. The Defendants negligently breached said duty.

56. The Plaintiff was damaged as a proximate result of said breach of duty.

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against each named Defendant and Fictitious Defendant, separately and severally, for compensatory damages in an amount to be determined by the jury, plus costs, along with such other, further and different relief to which Plaintiff may be entitled.

## COUNT: GROSS NEGLIGENCE

57. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

58. Defendants possessed an entire want of care.

...

M20120

59. Defendants' conduct was so gross as to charge the Defendants with the presumption that they, being cognizant of the probable consequences, were indifferent to the danger to which the Plaintiff was be exposed.

60. Defendants exhibited a conscious indifference to consequences.[3]

61. The Plaintiff was damaged as a proximate result of said grossly negligent conduct.

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against each named Defendant and Fictitious Defendant, separately and severally, for compensatory and punitive damages in an amount to be determined by the jury, plus costs, along with such other, further and different relief to which Plaintiff may be entitled.

## COUNT: INTRUSION INTO SOLITUDE OR SECLUSION

62. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

63. Defendants wrongfully intruded physically or otherwise into the Plaintiffs' physical solitude or seclusion[4] and /or:

64. Defendants wrongfully intruded into the Plaintiffs' private activities in such as manner as to:

    outrage; and /or

---

[3] Alabama G.S.R. Co. v. Arnold, 2 So. 337, 342 (Ala. 1887).

[4] Norris v. Moskin Stores, Inc., 132 So.2d 321 (1961).

M20120

cause mental suffering, shame or humiliation to a person of ordinary sensibilities;[5] and /or

cause a person of ordinary sensibilities mental suffering, shame or humiliation.

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against each named Defendant and Fictitious Defendant, separately and severally, for compensatory and punitive damages in an amount to be determined by the jury, plus costs, along with such other, further and different relief to which Plaintiff may be entitled.

## COUNT: WANTONNESS/RECKLESSNESS

65. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here in full.

66. Defendants' actions were the conscious doing of the act(s) herein complained and /or the conscious omission(s) herein complained under knowledge of existing conditions and conscious that from the doing of such act(s) and /or omission(s) injury will likely or probably result.

67. The Defendants were recklessly indifferent to the consequences of committing these wrongful acts.

68. The Defendants were recklessly indifferent to the consequences of his or her

---

[5] Smith v. Doss, 37 So.2d 118, 120 (1948).

M20120

omission.

69. The Defendants' actions were reckless and/or wanton,[6] without legitimate excuse, and without legal cause.

70. The Defendants' actions did not lie in any justifiable or reasonable or excusable reasons.

71. The Defendants knew, or should have known, that their actions or lack of actions would likely or probably result in injury to the Plaintiffs.

72. The Defendants wanton and/or reckless conduct did cause injury to the Plaintiffs.

73. The Plaintiff demands punitive damages. Alabama Code § 6-11-20 (1975).

WHEREFORE, BASED ON THE FOREGOING, Plaintiff demands judgment against each named Defendant and Fictitious Defendant, separately and severally, for compensatory and punitive damages in an amount to be determined by the jury, plus costs, along with such other, further and different relief to which Plaintiff may be entitled.

### *General Legal Allegations*

74. Plaintiff extends liability to Defendants by way of respondeat superior, civil conspiracy and /or joint enterprise.

*Plaintiff Demands a Jury Struck and Sworn*

---

[6] See, for example, Hamme v. CSX Tranportation, Inc., 621 So.2d 281 (1993, Ala.).

M20120

Done this _16th_ day of _August_, 2012.

Respectfully submitted,

*/s/ Brandon L. Blankenship*

---

Brandon L. Blankenship
Attorneys for Plaintiff
BLA 116 (ASB-6436-N77B)
Blankenship Harrelson, LLP
15 Southlake Lane, Suite 350
Birmingham, AL  35203-2774
(205) 912-8255
Facsimile:  (205) 912-8258
Email: brandon.blankenship@bhattorneysllp.com

Service to be Completed On:

CSC Lawyers Incorporating SVC, Inc.
150 S. Perry St.
Montgomery, AL 36104